UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| PARADIGM EQUIPMENT FINANCE, INC., | ) ) ) | |
|---|---|---|
| Plaintiff, | ) ) | No. 18 C 2284 |
| v. | ) ) ) | Magistrate Judge M. David Weisman |
| PETERSON MEDICAL SURGI-CENTER, S.C., AREF SENNO, PAULINE K. SENNO, and ADVANCED DISGNOSTICS, INC., | ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff sues defendants for their alleged breaches of an equipment lease and personal guarantees. The case is before the Court on plaintiff's Federal Rule of Civil Procedure ("Rule") 56 motion for summary judgment. For the reasons set forth below, the Court grants the motion.

**Facts**

On September 22, 2017, plaintiff entered into an agreement to lease to defendant Peterson a "2009 Hitachi Airis II, .23 Open MRI, bearing serial no. S/N C 103" and a "2009 Hitachi CXR4 CT, bearing S/N CXR46227, and any and all attachments, accessories, additions, enhancements and replacements thereto" ("the leased equipment"). (Defs.' Resp. Pl.'s LR 56.1(a) Stmt., ECF 45 ¶¶ 8, 13.) The agreement required Peterson to make a total of thirty-six consecutive monthly payments of $11,115, with the first and last payments due at closing. (*Id.* ¶¶ 14, 16.) The same day, defendants Aref Senno and Pauline K. Senno and Advanced Diagnostics each signed guarantees in which they "irrevocably and unconditionally guarant[eed]" Peterson's obligations

under the lease. (*See* Pl.'s Exs. Supp. Mot. Summ. J., Guarantees, ECF 39-4, 39-5 & 39-6 § 1.) The only payments Peterson made under the lease were the two payments due at closing. (Defs.' Resp. Pl.'s LR 56.1(a) Stmt., ECF 45 ¶ 22.) Plaintiff contends that defendants are in default of their contractual obligations and seeks damages, attorney's fees, and possession of the leased equipment.

## Discussion

To prevail on a summary judgment motion, "the movant [must] show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, the Court does not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court views all evidence and draws all inferences in favor of the non-moving party. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Ricci v. DeStefano,* 557 U.S. 557, 586 (2009).

**Venue**

Defendants argue that plaintiff's motion should be denied because this suit was brought in the wrong venue. (*See* Pl.'s Exs. Supp. Mot. Summ. J., Lease Agreement, ECF 39-2 § 20e ("[A]ny suit or other proceeding brought by either party to enforce or construe this Lease . . . or to determine matters relating to the Property or the relationship between the parties hereto shall be brought only in the state or federal courts in the State of Utah.").) Under Rule 12, however, a party waives the defense of improper venue by failing to raise it in a motion to dismiss or in its answer. Fed. R.

Civ. P. 12(b)(3), (h)(1)(B). Defendants did not file a motion to dismiss for improper venue, and they admitted in their answer that venue was proper in this Court. (*See* Answer, ECF 25 ¶ 7.)

Defendants contend that they can escape this admission because the lease contains a non-waiver provision. (*See* Pl.'s Exs. Supp. Mot. Summ. J., Lease Agreement, ECF 39-2 § 20i ("A waiver by either Party of any term or condition of this agreement . . . shall not be deemed or construed to be a waiver of such term or condition for the future, or any subsequent breach thereof.").) Even if that provision applies, an issue the Court does not decide, and defendants have not waived their defense of improper venue, they can still be equitably estopped from asserting it:

> If the defendant tells the plaintiff that he is content with the venue of the suit, or by words or actions misleads the plaintiff into thinking this or the court into becoming involved in the case so that there would be wasted judicial effort were the case to be dismissed to another forum, or if he stalls in pleading improper venue because he wants to find out which way the wind is blowing, then conventional principles of waiver or equitable estoppel come into play and if invoked by the plaintiff block the challenge to venue.

*Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd.*, 364 F.3d 884, 887-88 (7th Cir. 2004). Such is the case here. Defendants admitted that venue was proper and have litigated the case here for nearly a year. Having lulled both plaintiff and the Court into believing they had no objection to this venue, defendants cannot object to it now. *Cf. Cange v. Stotler & Co.*, 826 F.2d 581, 587 (7th Cir. 1987) ("The federal doctrine of equitable estoppel reflects a deeply rooted principle of law, older than the country itself, that courts will not permit a party to assert a defense . . . if the defense would enable the party to take advantage of his or her own wrongdoing.") (quotations omitted).

**Lack of Capacity**

Defendants also argue that plaintiff's motion should be denied because plaintiff, a Utah corporation, was not authorized to transact business or file a lawsuit in this state until more than six months after it filed this suit. *See* 805 Ill. Comp. Stat. 5/13.70(a) ("No foreign corporation

transacting business in this State without authority to do so is permitted to maintain a civil action in any court of this State, until the corporation obtains that authority."); (Pl.'s Reply Defs.' LR 56.1 Stmt. Add'l Facts, ECF 51 ¶¶ 5-6 (admitting that plaintiff became authorized to do business in Illinois on November 26, 2018 and that this suit was filed before that date). However, under Illinois law, a corporation can "cure its incapacity during the pendency of [a lawsuit] by bringing itself into compliance with the requirements of the statute." *Young Am.'s Found. v. Doris A. Pistole Revocable Living Tr.*, 998 N.E.2d 94, 108 (Ill. App. Ct. 2013). Because it is undisputed that plaintiff did so (Pl.'s Reply Defs.' LR 56.1 Stmt. Add'l Facts, ECF 51 ¶¶ 5-6), lack of capacity to file suit is not a basis for denying plaintiff's summary judgment motion.

**Breach of Contract**

In Counts I and II, plaintiff asserts claims for breach of contract. To prevail on these claims, plaintiff must prove that valid contracts exist, plaintiff performed its obligations under the contracts, defendants did not, and plaintiff was damaged as a result. *Am. W. Bank Members, L.C. v. State*, 342 P.3d 224, 230-31 (Utah 2014); *First Nat'l Bank in Grand Junction v. Osborne*, 503 P.2d 440, 442 (Utah 1972) ("A contract of guaranty is governed by the rules of contract law . . . .").[1] There is no dispute that plaintiff and defendant Peterson entered into the lease agreement (Defs.' Resp. Pl.'s LR 56.1(a) Stmt., ECF 45 ¶ 8), and defendants do not argue that the lease is invalid.

They claim, however, that the guarantees are invalid because, "by [their] plain language" the guarantees require plaintiff's signature "to be complete." (Pl.'s Mem. Opp'n Mot. Summ. J.,

---

[1] The lease agreement and guarantees contain Utah choice-of law-provisions. (*See* Pl.'s Exs. Supp. Mot. Summ J., ECF 39-2 § 20e, ECF 39-4 § 7, ECF 39-5 § 7, ECF 39-6 § 7.) However, the elements of a breach of contract/guaranty are the same under Illinois law. *See Babbitt Municipalities, Inc. v. Health Care Serv. Corp.*, 64 N.E.3d 1178, 1186 (Ill. App. Ct. 2016) (setting forth elements of breach of contract); *TH Davidson & Co. v. Eidola Concrete, LLC*, 972 N.E.2d 823, 825 (Ill. App. Ct. 2012) (stating that "[a] guaranty contract is construed according to the principles that govern contracts generally").

ECF 47 at 5.) That "plain language," defendants contend, appears in § 20(u) of the lease agreement, which, in relevant part, states: "The Lease may not be amended or modified except by a written amendment executed by a duly authorized representative of each party." (Pl.'s Exs. Supp. Mot. Summ. J., ECF 39-2 § 20u.) But the lease and guarantees are separate contracts. *Sur. Life Ins. Co. v. Rupp*, 833 P.2d 366, 370 (Utah Ct. App. 1992), *overruled on other grounds by Sur. Life Ins. Co. v. Smith*, 892 P.2d 1 (Utah 1995). ("[A] guaranty agreement is separate from the principal obligation and, therefore, creates a separate and independent obligation."). Therefore, the terms of the former do not apply to the latter. Further, even if they did, lease § 20u applies to amendments or modifications, and there is no evidence that the guarantees were modified or amended. In short, there is nothing in the record to suggest that the guarantees were only valid if plaintiff signed them.

That proposition also finds no support in the law. Defendants do not cite, and the Court has not found, any Utah cases that require a guaranty to be signed by the party it benefits.[2] In fact, the only case the Court could find on this point says the opposite. *See Lester Piano Co. v. Romney*, 126 P. 325, 327 (Utah 1912) ("[A] guaranty executed and delivered at the request of the party guaranteed is to be deemed the answer of the guarantor to a proposal made to him, and there is thus constituted the mutual assent necessary to the consummation of a contract of absolute guaranty."). *Cf.* Utah Code Ann. § 25-5-4(1)(b) (stating that "every promise to answer for the debt, default, or miscarriage of another" must be "in writing . . . [and] *signed by the party to be charged with the agreement*") (emphasis added). Thus, the absence of plaintiff's signature on the guarantees does not render them invalid.

---

[2] Nor do the Illinois cases defendants cite. (*See* Defs.' Mem. Opp'n Mot. Summ. J., ECF 47 at 5-6.)

In sum, the record establishes the first element of plaintiff's contract claims, that the lease and guarantees are valid contracts. It also establishes the remaining elements, that plaintiff performed its obligations, defendants did not perform theirs, and plaintiff was damaged as a result. (*See* Defs.' Resp. Pl.'s LR 56.1(a) Stmt. ¶¶ 21-22, 24, 29.)[3, 4] Plaintiff is therefore entitled to judgment as matter of law on Counts I and II.

In Count III, plaintiff asserts a claim for possession of the equipment under § 19k of the lease and section 9-609 of the Uniform Commercial Code, which, upon default, permits a secured party to take possession of the collateral and "require the debtor to assemble the collateral and make it available to the secured party at a place to be designated by the secured party which is reasonably convenient to both parties." U.C.C. § 9-609(a), (c);[5] (*see* Pl.'s Exs. Supp. Mot. Summ. J., ECF 39-2 § 19k (giving plaintiff the right, upon default, "[to] exercise any other right or remedy which may be available to it under the Uniform Commercial Code or any other applicable law").) There is no dispute that defendant Peterson is in default under the lease and has possession of the leased equipment. (Defs.' Resp. Pl.'s LR 56.1(a) Stmt. ¶¶ 8, 22.) Accordingly, plaintiff is entitled to judgment on Count III and possession of the equipment.

---

[3] Defendants deny that plaintiff performed its contractual obligations because plaintiff did not execute the guarantees. (*See* Defs.' Resp. Pl.'s LR 56.1(a) Stmt., ECF 45 ¶ 21.) For the reasons discussed above, however, plaintiff was not required to do so.
[4] Defendants deny that plaintiff is entitled to certain elements of damages but not that plaintiff was damaged by their breach. (*See* Defs.' Resp. Pl.'s LR 56.1(a) Stmt., ECF 45 ¶ 29.)
[5] Utah has adopted this section of the U.C.C. *See* Utah Code Ann. § 70A-9a-609.

## Conclusion

For the reasons set forth above, the Court grants plaintiff's motion for summary judgment [37]. Under the terms of the lease agreement, plaintiff is entitled to recover "all amounts due or to become due . . . for the full term of the lease" plus interest at an annual rate of eighteen percent,[6] legal fees at $250 per hour,[7] costs, and possession of the leased equipment. (Pl.'s Exs. Supp. Mot. Summ. J., ECF 39-2 §§ 19h, 19k, 19q, 20t.)[8]  Within seven days of the date of this Order, the parties are to submit to the Court's proposed order email a proposed judgment order that they agree contains the relief set forth in this Memorandum Opinion and Order.  If the parties cannot agree on the substance of the proposed judgment order, they should file separate proposals and a brief explanation of their reasoning.  Thereafter, the Court will enter the appropriate judgment.

**SO ORDERED.**                    ENTERED:   January 28, 2019

*M. David Weisman*
**M. David Weisman**
**United States Magistrate Judge**

---

[6] It is undisputed that as of November 6, 2018, the lease payments plus interest totaled $394,348.11, with interest accruing at $130.93 per day.  (Defs.' Resp. Pl.'s LR 56.1(a) Stmt., ECF 45 ¶ 29.)

[7] "Attorney fees are generally recoverable in Utah if provided for by contract," *G.G.A., Inc. v. Leventis*, 773 P.2d 841, 846 (Utah Ct. App. 1989), and as of November 12, 2018, plaintiff had incurred a total of $14,374.45 in attorney's fees and costs.  (*See* Peters Aff., ECF 38-1.)

[8] The lease also entitles plaintiff to certain late fees (*see* Pl.'s Exs. Supp. Mot. Summ. J., Lease Agreement, ECF 39-2 § 3), which defendants claim are an illegal penalty.  The Court need not address that issue, however, because "[p]laintiff is not seeking late fees." (Pl.'s Mem. Supp. Mot. Summ. J., ECF 50 at 13.)